# DEAL *v.* UNITED STATES

No. 91–8199.   Argued March 1, 1993—Decided May 17, 1993

*Dola J. Young* argued the cause for petitioner. With her on the briefs were *Roland E. Dahlin II* and *H. Michael Sokolow.*

*Miguel A. Estrada* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Robert J. Erickson.*

JUSTICE SCALIA delivered the opinion of the Court.

Between January and April 1990, petitioner committed six bank robberies on six different dates in the Houston, Texas, area. In each robbery, he used a gun. Petitioner was convicted of six counts of bank robbery, 18 U. S. C. §§ 2113(a) and (d), six counts of carrying and using a firearm during and in relation to a crime of violence, § 924(c), and one count of being a felon in possession of firearms, § 922(g). Title 18 U. S. C. § 924(c)(1) (1988 ed., Supp. III) provides:

> "Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years . . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . ."

The United States District Court for the Southern District of Texas sentenced petitioner to 5 years' imprisonment on the first § 924(c)(1) count and to 20 years on each of the other five § 924(c)(1) counts, the terms to run consecutively. The United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentence. 954 F. 2d 262 (1992). We granted certiorari on the question whether petitioner's second through sixth convictions under § 924(c)(1) in this single proceeding arose "[i]n the case of his second or subsequent conviction" within the meaning of § 924(c)(1). 506 U. S. 814 (1992).

Petitioner contends that the language of § 924(c)(1) is facially ambiguous, and should therefore be construed in his favor pursuant to the rule of lenity. His principal argument in this regard is that the word "conviction" can, according to the dictionary, have two meanings, "either the return of a jury verdict of guilt or the entry of a final judgment on that verdict," Brief for Petitioner 4; and that the phrase "second or subsequent conviction" could therefore "mean 'an additional finding of guilt rendered at any time'" (which would include petitioner's convictions on the second through sixth counts in the single proceeding here) or "'a judgment of conviction entered at a later time,'" (which would not include those convictions, since the District Court entered only a single judgment on all of the counts), id., at 7.

It is certainly correct that the word "conviction" can mean either the finding of guilt or the entry of a final judgment on that finding. The word has many other meanings as well, including "[a]ct of convincing of error, or of compelling the admission of a truth"; "[s]tate of being convinced; esp., state of being convicted of sin, or by one's conscience"; "[a] strong persuasion or belief; as, to live up to one's *convictions;* an intensity of thorough *conviction.*" Webster's New International Dictionary 584 (2d ed. 1950). But of course susceptibility of all of these meanings does not render the word "conviction," whenever it is used, ambiguous; all but one of the

meanings is ordinarily eliminated by context. There is not the slightest doubt, for example, that § 924(c)(1), which deals with punishment in this world rather than the next, does not use "conviction" to mean the state of being convicted of sin. Petitioner's contention overlooks, we think, this fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used. See *King* v. *St. Vincent's Hospital,* 502 U. S. 215, 221 (1991); *Davis* v. *Michigan Dept. of Treasury,* 489 U. S. 803, 809 (1989); *United States* v. *Morton,* 467 U. S. 822, 828 (1984).

In the context of § 924(c)(1), we think it unambiguous that "conviction" refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction. A judgment of conviction includes both the adjudication of guilt and the sentence. See Fed. Rule Crim. Proc. 32(b)(1) ("A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication *and sentence*" (emphasis added)); see also Black's Law Dictionary 843 (6th ed. 1990) (quoting Rule 32(b)(1) in defining "judgment of conviction"). Thus, if "conviction" in § 924(c)(1) meant "judgment of conviction," the provision would be incoherent, prescribing that a sentence which has already been imposed (the defendant's second or subsequent "conviction") shall be 5 or 20 years longer than it was.

Petitioner contends that this absurd result is avoided by the "[i]n the case of" language at the beginning of the provision. He maintains that a case is the "case of [a defendant's] second or subsequent" entry of judgment of conviction even before the court has entered that judgment of conviction and even before the court has imposed the sentence that is the prerequisite to the entry of judgment of conviction. We think not. If "conviction" meant "entry of judgment of conviction," a "case" would surely not be the "case of his second or subsequent conviction" *until* that judgment of conviction was entered, by which time a lower sentence than that which

§ 924(c)(1) requires would already have been imposed. And more fundamentally still, petitioner's contention displays once again the regrettable penchant for construing words in isolation. The word "case" can assuredly refer to a legal proceeding, and if the phrase "in the case of" is followed by a name, such as *"Marbury* v. *Madison,"* that is the apparent meaning. When followed by an act or event, however, "in the case of" normally means "in the event of"—and we think that is its meaning here.

The sentence of § 924(c)(1) that immediately follows the one at issue here confirms our reading of the term "conviction." That sentence provides: "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection." That provision, like the one before us in this case, is obviously meant to control the terms of a sentence *yet to be imposed.* But if we give the term "convicted" a meaning similar to what petitioner contends is meant by "conviction"—as connoting, that is, the entry of judgment, which includes sentence—we once again confront a situation in which the prescription of the terms of a sentence cannot be effective until it is too late, *i. e.,* until after the sentence has already been pronounced.[1]

We are also confirmed in our conclusion by the recognition that petitioner's reading would give a prosecutor unreviewable discretion either to impose or to waive the enhanced sentencing provisions of § 924(c)(1) by opting to charge and try the defendant either in separate prosecutions or under a multicount indictment. Although the present prosecution

---

[1] Petitioner also argues that the terms "second" and "subsequent" admit of at least two meanings—next in time and next in order or succession. That ambiguity is worth pursuing if "conviction" means "judgment," since a judgment entered once-in-time can (as here) include multiple counts. The point becomes irrelevant, however, when "conviction" means (as we hold) a finding of guilt. Unlike a judgment on several counts, findings of guilt on several counts are necessarily arrived at successively in time.

would not have permitted enhanced sentencing, if the same charges had been divided into six separate prosecutions for the six separate bank robberies, enhanced sentencing would clearly have been required. We are not disposed to give the statute a meaning that produces such strange consequences.[2]

The dissent contends that § 924(c)(1) must be read to impose the enhanced sentence only for an offense committed after a previous sentence has become final. Though this interpretation was not mentioned in petitioner's briefs, and was put forward only as a fallback position in petitioner's oral argument, see Tr. of Oral Arg. 4, the dissent thinks it so "obvious," *post*, at 142, that our rejection of it constitutes a triumph of "textualism" over "common sense," *post*, at 146, and the result of "an elaborate exercise in sentence parsing," *ibid.* We note, to begin with, that most of the textual distinctions made in this opinion—*all* of them up to this point—respond to the elaborate principal argument of petitioner that "conviction" means "entry of judgment." It takes not much "sentence parsing" to reject the quite different argument of the dissent that the terms "subsequent offense" and "second or subsequent conviction" mean exactly the same thing, so that "second conviction" means "first offense after an earlier conviction."

No one can disagree with the dissent's assertion that "Congress sometimes uses slightly different language to convey the same message," *post*, at 137—but when it does so it uses "slightly different language" *that means the same thing.* "Member of the House" instead of "Representative," for

---

[2] The dissent contends that even under our reading of the statute, "prosecutors will continue to enjoy considerable discretion in deciding how many § 924(c) offenses to charge in relation to a criminal transaction or series of transactions." *Post*, at 145. That discretion, however, pertains to the prosecutor's universally available and unvoidable power *to charge or not to charge* an offense. Petitioner's reading would confer the extraordinary new power *to determine the punishment for a charged offense* by simply modifying the manner of charging.

example. Or "criminal offense" instead of "crime." But to say that "subsequent offense" means the same thing as "second or subsequent conviction" requires a degree of verbal know-nothingism that would render government by legislation quite impossible. Under the terminology "second or subsequent conviction," in the context at issue here, it is entirely clear (without any "sentence parsing") that a defendant convicted of a crime committed in 1992, who has previously been convicted of a crime committed in 1993, would receive the enhanced sentence.

The dissent quotes extensively from *Gonzalez* v. *United States*, 224 F. 2d 431 (CA1 1955). See *post*, at 138–139. But far from supporting the "text-insensitive" approach favored by the dissent, that case acknowledges that "[i]n construing subsequent offender statutes . . . the decisions of the courts have varied depending upon the particular statute involved." 224 F. 2d, at 434. It says; as the dissent points out, that federal courts have "uniformly" held it to be the rule that a second offense can occur only after conviction for the first. *Ibid.* But those holdings were not arrived at in disregard of the statutory text. To the contrary, as *Gonzalez* goes on to explain:

> "'It cannot legally be known that an offense has been committed until there has been a conviction. A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense.'" *Ibid.* (quoting *Holst* v. *Owens*, 24 F. 2d 100, 101 (CA5 1928)).

The present statute, however, does not use the term "offense," so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a *conviction* after the first conviction. There is utterly no ambiguity in that, and hence no occasion to invoke the rule of lenity. (The erroneous lower-court decisions cited by the dissent, see *post*, at 142–144, do not alter this assessment;

judges cannot cause a clear text to become ambiguous by ignoring it.)

In the end, nothing but personal intuition supports the dissent's contention that the statute is directed at those who "'failed to learn their lessons from the initial punishment,'" *post*, at 146 (quoting *United States* v. *Neal*, 976 F. 2d 601, 603 (CA9 1992) (Fletcher, J., dissenting)). Like most intuitions, it finds Congress to have intended what the intuitor thinks Congress *ought* to intend.[3] And like most intuitions, it is not very precise. "[F]ailed to learn their lessons from the initial punishment" would seem to suggest that the *serving* of the punishment, rather than the mere pronouncement of it, is necessary before the repeat criminal will be deemed an inadequate student—a position that certainly appeals to "common sense," if not to text. Elsewhere, however, the dissent says that the lesson is taught once "an earlier conviction has become final," *post*, at 142—so that the felon who escapes during a trial that results in a conviction becomes eligible for enhanced punishment for his later crimes, though he has seemingly been taught no lesson except that the law is easy to beat. But no matter. Once text is abandoned, one intuition will serve as well as the other. We choose to follow the language of the statute, which gives no indication that punishment of those who fail to learn the "lesson" of prior conviction or of prior punishment is the sole purpose of § 924(c)(1), to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely. We do not agree with the dissent's suggestion that these goals defy "common sense." It seems to us eminently sensible to punish the second murder, for

---

[3] The dissent quotes approvingly the ungarnished policy view that "'punishing first offenders [*i. e.*, repeat offenders who have not yet been convicted of an earlier offense] with twenty-five-year sentences does not deter crime as much as it ruins lives.'" *Post*, at 146, n. 10 (quoting *United States* v. *Jones*, 965 F. 2d 1507, 1521 (CA8 1992)).

example, with life in prison rather than a term of years—whether or not conviction of the first murder (or completion of the sentence for the first murder) has yet occurred.

Finally, we need not tarry over petitioner's contention that the rule of lenity is called for because his 105-year sentence "is so glaringly unjust that the Court cannot but question whether Congress intended such an application of the phrase, 'in the case of his second or subsequent conviction.'" Brief for Petitioner 24. Even under the dissent's reading of § 924(c)(1), some criminals whose only offenses consist of six armed bank robberies would receive a total sentence of 105 years in prison. We see no reason why it is "glaringly unjust" that petitioner be treated similarly here, simply because he managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN and JUSTICE O'CONNOR join, dissenting.

Congress sometimes uses slightly different language to convey the same message. Thus, Congress uses the terms "subsequent offense," "second or subsequent offense," and "second or subsequent conviction" in various sections of the Criminal Code, all to authorize enhanced sentences for repeat offenders.[1] On some occasions, Congress meticulously defines the chosen term to identify those offenses committed after a prior conviction "has become final";[2] more frequently,

---

[1] See, e. g., 18 U. S. C. § 1302 ("subsequent offense" related to mailing of lottery tickets); § 1735 ("second or subsequent offense" related to sexually oriented advertising); § 844(h) ("second or subsequent conviction" for felonious use of explosives).

[2] See, e. g., 21 U. S. C. § 859(b) (1988 ed., Supp. III) (distribution of drugs to minors); 21 U. S. C. § 860(b) (1988 ed., Supp. III) (distribution of drugs near schools); 21 U. S. C. § 962(b) (importation of controlled substances).

it relies on settled usage and the reader's common sense to impart the same meaning.

In certain sections of the Code, even absent a definition, the context makes perfectly clear that the word "subsequent" describes only those offenses committed after a prior conviction has become final. Title 18 U. S. C. § 1302, for instance, which prohibits mailing of lottery tickets, authorizes a 5-year prison sentence for "any subsequent offense." A literal reading of that phrase, like the one adopted by the majority today, presumably would justify imposition of five 5-year sentences if a defendant who sold six lottery tickets through the mail were charged in a single indictment. But it is absurd to think that Congress intended to treat such a defendant as a repeat offender, subject to penalty enhancement, "simply because he managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding." *Ante,* at 137.

In other Code sections, where context is less illuminating, the long-established usage of the word "subsequent" to distinguish between first offenders and recidivists is sufficient to avoid misunderstanding by anyone familiar with federal criminal practice.[3] Thus, in a 1955 opinion construing the undefined term "subsequent offense," the First Circuit noted that most "subsequent offender" statutes had been construed to provide that any offense "committed subsequent to a conviction calls for the increased penalty." *Gonzalez* v. *United States,* 224 F. 2d 431, 434 (1955). The court continued:

> "In the United States courts uniformly this has been held to be the rule. In Singer v. United States, [278 F. 415 (1922)], the Court of Appeals for the Third Circuit considered a substantially similar statute to that presently before us and held that a second offense within the

---

[3] See, *e. g.,* 18 U. S. C. § 2114 ("subsequent offense" of mail robbery), as interpreted in *United States* v. *Cooper,* 580 F. 2d 259, 261 (CA7 1978) ("obvious" that "subsequent offense" language must be read as applying only to offenses committed after conviction on a prior offense).

meaning of the statute could occur only after a conviction for the first offense. See, e. g., United States v. Lindquist, [285 F. 447 (WD Wash. 1921)], and Biddle v. Thiele, [11 F. 2d 235 (CA8 1926)]. The Court of Appeals for the Fifth Circuit said in Holst v. Owens, [24 F. 2d 100, 101 (1928)]: 'It cannot legally be known that an offense has been committed until there has been a conviction. A second offense, as used in the criminal statutes, is one that has been committed after conviction for a first offense. Likewise, a third or any subsequent offense implies a repetition of crime after each previous conviction.' Similarly, in Smith v. United States, [41 F. 2d 215, 217 (CA9 1930)], the court stated: 'In order that a conviction shall affect the penalty for subsequent offenses, it must be prior to the commission of the offense.'" *Ibid.*

Congress did not define the term "subsequent conviction" when it enacted § 924(c) in 1968. It is fair to presume, however, that Congress was familiar with the usage uniformly followed in the federal courts. See *NLRB* v. *Amax Coal Co.*, 453 U. S. 322, 329 (1981); *Perrin* v. *United States*, 444 U. S. 37, 42–45 (1979). Indeed, given the settled construction of repeat offender provisions, it is hardly surprising that Congressman Poff, who proposed the floor amendment that became § 924(c), felt it unnecessary to elaborate further. Cf. *Morissette* v. *United States*, 342 U. S. 246, 263 (1952) ("[W]here Congress borrows terms of art ... absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them"). It is also unsurprising that there appears to have been no misunderstanding of the term "second or subsequent conviction" for almost 20 years after the enactment of § 924(c).

Section 924(c) was construed by this Court for the first time in *Simpson* v. *United States*, 435 U. S. 6 (1978), a case involving sentencing of a defendant who had committed two bank robberies, two months apart. Convicted in two sepa-

rate trials, the defendant was sentenced in each for bank robbery, and in each to 10 years under § 924(c), then the maximum authorized term for a first-time offender. *Id.*, at 9. Apparently, nobody considered the possibility that the defendant might have been treated as a repeat offender at his second trial, and sentenced under § 924(c)'s "second or subsequent conviction" provision. In any event, despite the fact that the literal language of the statute would have authorized the § 924(c) sentences, *id.*, at 16–17 (REHNQUIST, J., dissenting), the Court set them aside, applying the rule of lenity and concluding that Congress did not intend enhancement under § 924(c) when, as in Simpson's case, a defendant is also sentenced under a substantive statute providing for an enhancement for use of a firearm. *Id.*, at 14–15.

In *Busic* v. *United States*, 446 U. S. 398 (1980), the Court construed the first offender portion of § 924(c) even more narrowly than in *Simpson*, again rejecting a literal reading of the statutory text that would have supported a contrary result. In his dissenting opinion, Justice Stewart succinctly described § 924(c) as a "general enhancement provision—with its stiff sanctions for first offenders and even stiffer sanctions for recidivists."[4] This understanding that the term "second or subsequent conviction" was used to describe recidivism seemingly was shared by other judges, as several years were to elapse before the construction adopted by the Eleventh Circuit in *United States* v. *Rawlings*, 821 F. 2d

---

[4] 446 U. S., at 416. His full comment:

"I agree with the holding in *Simpson* that Congress did not intend to 'pyramid' punishments for the use of a firearm in a single criminal transaction. Yet I find quite implausible the proposition that Congress, in enacting § 924(c)(1), did not intend this general enhancement provision—with its stiff sanctions for first offenders and even stiffer sanctions for recidivists—to serve as an alternative source of enhanced punishment for those who commit felonies, such as bank robbery and assaulting a federal officer, that had been previously singled out by Congress as warranting special enhancement, but for which a lesser enhancement sanction than that imposed by § 924(c) had been authorized."

1543, cert. denied, 484 U. S. 979 (1987), and endorsed by the Court today, appeared in any reported judicial opinion.

At oral argument, the Government was unable to tell us how the "second or subsequent conviction" language of §.924(c) was construed by Government prosecutors prior to 1987, when *Rawlings* was decided. Tr. of Oral Arg. 27–28. It seems to me, however, quite likely that until 1987, the Government read the "second or subsequent" section of § 924(c) as a straightforward recidivist provision, just as Justice Stewart did in 1980. That reading certainly would comport with the Government's submissions to this Court in *Simpson, supra,* and *Busic, supra,* both of which describe the "second or subsequent conviction" provision in terms of recidivism.[5] It would be consistent, too, with the reported cases involving § 924(c) sentencing, which make clear that the district courts were routinely imposing consecutive 5-year sentences when defendants were convicted of two separate offenses under § 924(c), apparently without objection from the Government that the second conviction warranted a longer sentence. See, *e. g., United States* v. *Henry,* 878 F. 2d 937, 938 (CA6 1989); *United States* v. *Jim,* 865 F. 2d 211, 212 (CA9), cert. denied, 493 U. S. 827 (1989); *United States* v. *Fontanilla,* 849 F. 2d 1257, 1258 (CA9 1988); *United States* v. *Chalan,* 812 F. 2d 1302, 1315 (CA10 1987), cert. denied, 488 U. S. 983 (1988).

In light of this history, I would find no ambiguity in the phrase "subsequent conviction" as used in § 924(c). Like its many counterparts in the Criminal Code, the phrase clearly is intended to refer to a conviction for an offense committed

---

[5] See Brief for United States in *Busic* v. *United States,* O. T. 1979, No. 78–6020, p. 19 ("Section 924(c) establishes mandatory minimum sentences, requires increasingly severe sentences for recidivists (without possibility of suspension or probation), and prohibits concurrent sentencing"); Brief for United States in *Simpson* v. *United States,* O. T. 1977, No. 76–5761, pp. 13–14 (discussing application of sentencing provisions "[i]f the gun-wielding bank robber were a recidivist").

after an earlier conviction has become final; it is, in short, a recidivist provision. When that sensible construction is adopted, of course, the grammatical difficulties and the potential for prosecutorial manipulation that trouble the majority, see *ante,* at 131–134, are avoided entirely. See *United States* v. *Neal,* 976 F. 2d 601, 603 (CA9 1992) (Fletcher, J., dissenting) ("common-sense reading of § 924(c)" as recidivist statute).

Even assuming, however, that the meaning of § 924(c)'s repeat offender provision is not as obvious as I think, its history belies the notion that its text admits of only one reading, that adopted in *Rawlings.* Surely it cannot be argued that a construction surfacing for the first time 19 years after enactment is the only available construction. Indeed, even after *Rawlings,* there is no consensus on this point; some courts—and some Government prosecutors—continue to apply § 924(c) as a recidivist statute.[6] In *United States* v. *Nabors,* 901 F. 2d 1351 (CA6), cert. denied, 498 U. S. 871 (1990), for instance, a case decided in 1990, the Court of Appeals purported to follow *Rawlings,* but actually affirmed imposition of two 5-year sentences for convictions on two distinct § 924(c) violations.[7] Similarly, in *United States* v.

---

[6] Dismissing these cases, as well as those decided pre-*Rawlings,* as a long line of "erroneous lower-court decisions," *ante,* at 135, cannot explain why 19 years passed before the correct interpretation of a statute of "utterly no ambiguity," *ibid.,* made its first reported appearance.

[7] There is some tension between the notion that the text of the statute is clear and unambiguous and the Court of Appeals' explanation for its holding:

"While § 924(c)(1) is, at best, hard to follow in simple English, we concur with the reasoning in *Rawlings* that two distinct violations of the statute trigger the subsequent sentence enhancement provisions of § 924(c)(1). Thus, the commission of two violations of § 924(c)(1) would result in a five-year consecutive sentence for the first conviction and a ten-year consecutive sentence for the second § 924(c)(1) conviction. However, because of the complexity of this issue, we find the district court's failure to sentence Nabors to a ten-year consecutive sentence for his second § 924(c)(1) conviction not clearly erroneous." *United States* v. *Nabors,* 901 F. 2d, at 1358–1359.

*Luskin*, 926 F. 2d 372 (CA4), cert. denied, 502 U. S. 815 (1991), decided a year later, the Court of Appeals upheld three 5-year sentences for three violations of § 924(c) committed on separate dates, even though the minimum mandatory penalty for a "second or subsequent conviction" was 10 years at the time of trial. Significantly, the Government did not challenge the 5-year sentences on the second and third convictions.[8]

At the very least, this equivocation on the part of those charged with enforcing § 924(c), combined with the understanding of repeat offender provisions current when § 924(c) was enacted, render the construction of § 924(c) sufficiently uncertain that the rule of lenity should apply. Cf. *Simpson*, 435 U. S., at 14–15; see *United States* v. *Abreu*, 962 F. 2d 1447, 1450–1451 (CA10 1992) (en banc). As one District Court judge said of § 924(c), in the course of a 1991 sentencing:

> "The statute is not a model of clarity. Its use of the word 'conviction' rather than wording describing the offense suggests an intent to reach recidivists who repeat conduct after conviction in the judicial system for prior offenses. The legislative history suggests that Congress was trying to impose draconian punishment 'if he does it a second time.' 114 Cong. Rec. 22231, 22237 (1968). It is unclear whether this means a second time as a recidivist or a second time offender who has not faced deterrence by a prior sentence. Criminal statutes must be strictly construed. *Nabors* [901 F. 2d, at

---

[8] "The 1988 amendment raised the penalty for repeat violators of the statute to twenty years. In the version that was in effect at the time of the present crimes, the penalty for repeat violators was ten years. Arguably, the district judge should have sentenced appellant to one five-year and two ten-year consecutive terms of imprisonment for his convictions under Counts V through VII. However, since the United States has not counter-appealed on this point, we will not address it." *United States* v. *Luskin*, 926 F. 2d, at 374, n. 2.

1358] said that '§ 924(c)(1) is, at best, hard to follow in simple English . . .' With Mr. Godwin in front of me, I decline to hold him to a higher test than one found difficult by appellate court judges." *United States v. Godwin*, 758 F. Supp. 281, 283 (ED Pa. 1991).

In an effort to cure § 924(c) of any ambiguity, the Court undertakes an intricate grammatical analysis, with an emphasis on the word "conviction."[9] According to the Court, the "conviction" referred to in § 924(c) must be a finding of guilt, preceding the entry of final judgment, because sentence is imposed with the final judgment; if "conviction" referred to the final judgment itself, there would be no opportunity for sentence enhancement. *Ante*, at 132. The "absurd[ity]" of this situation, *ibid.*, which, I note, has thus far eluded all of the courts to apply § 924(c) as a recidivist

---

[9] The Court also suggests that use of the word "conviction," rather than "offense," distinguishes this statute from the repeat offender provisions discussed in *Gonzalez v. United States*, 224 F. 2d 431 (CA1 1955), *supra*, at 138–139. Of course, the majority's textualist approach would lead to the same result if § 924(c)'s enhancement were reserved for "second or subsequent offenses": At the time of sentencing for two violations committed on separate dates, one violation is "second or subsequent" to the other, and the conviction itself always will establish that two "offenses" have indeed been committed. See *ante*, at 135.

It is true, as the Court points out in passionate defense of its reading, that the words "offense" and "conviction" are not identical. What is at issue here, however, is not whether the terms mean the same thing in all usages, but whether they mean the same thing when they are used by Congress to identify the class of repeat offenders subject to enhanced sentences. Cf. *ante*, at 131–132 (context gives meaning to word "conviction"). If there is any difference between the terms as so used, it only lends further support to the conclusion that § 924(c) is a recidivist provision. As discussed above, repeat offender statutes couched in terms of "offense" were understood at the time of § 924(c)'s enactment to identify offenses committed after a prior *conviction*. See *supra*, at 138–139. *A fortiori*, "use of the word 'conviction' rather than wording describing the offense suggests an intent to reach recidivists who repeat conduct after conviction in the judicial system for prior offenses." *United States v. Godwin*, 758 F. Supp. 281, 283 (ED Pa. 1991).

statute, see *supra*, evaporates if we assume that sentencing judges are gifted with enough common sense to understand that they may, upon entry of a second final judgment, enhance the sentence incorporated therein. In any event, the majority's conclusion that a "second or subsequent conviction" is a finding of guilt leaves unanswered the question dispositive here: whether that second conviction (finding of guilt *or* entry of judgment) is subject to enhancement if it is not for an offense committed after a prior conviction has become final.

The Court finds additional support for its conclusion in the fact that at least some contrary readings of § 924(c) would "give a prosecutor unreviewable discretion either to impose or to waive the enhanced sentencing provisions" through the manner in which she charged a crime or crimes. *Ante*, at 133. I have already pointed out that the majority's particular concern is not implicated if § 924(c) is treated as a straightforward recidivist provision, *supra*, at 142–143; under that construction, a defendant who commits a second § 924(c) offense before trial on the first would not be eligible, for sentence enhancement whether the two counts were tried separately or together. I would add only that the Court's alternative reading does not solve the broader problem it identifies. As the Government concedes, see Tr. of Oral Arg. 31–32, prosecutors will continue to enjoy considerable discretion in deciding how many § 924(c) offenses to charge in relation to a criminal transaction or series of transactions. An armed defendant who robs a bank and, at the same time, assaults a guard, may be subject to one or two § 924(c) charges; the choice is the prosecutor's, and the consequence, under today's holding, the difference between a 5- and a 15-year enhancement. Cf. *United States* v. *Jim*, 865 F. 2d, at 212 (defendant charged with three counts under § 924(c), each arising from the same criminal episode); *United States* v. *Fontanilla*, 849 F. 2d, at 1257 (same).

Section 924(c) of the Criminal Code mandates an enhanced, 20-year sentence for repeat offenders. Between 1968, when the statute was enacted, and 1987, when textualism replaced common sense in its interpretation, the bench and bar seem to have understood that this provision applied to defendants who, having once been convicted under § 924(c), "failed to learn their lessons from the initial punishment" and committed a repeat offense. See *United States* v. *Neal*, 976 F. 2d, at 603 (Fletcher, J., dissenting).[10] The contrary reading adopted by the Court today, driven by an elaborate exercise in sentence parsing, is responsive to neither historical context nor common sense. Because I cannot agree with this unwarranted and unnecessarily harsh construction of § 924(c), the meaning of which should, at a minimum, be informed by the rule of lenity, I respectfully dissent.

---

[10] "However, punishing first offenders with twenty-five-year sentences does not deter crime as much as it ruins lives. If, after arrest and conviction, a first offender is warned that he will face a mandatory twenty-year sentence if he commits the same crime again, then the offender will know of the penalty. Having already served at least five years in prison, he will have a strong incentive to stay out of trouble. Discouraging recidivism by people who have already been in prison and been released serves a far more valuable purpose than deterring offenders who have yet to be arrested and have no knowledge of the law's penalties." *United States* v. *Jones*, 965 F. 2d 1507, 1521 (CA8 1992) (internal citation omitted).